IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| DALE SCOTT & COMPANY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. _____ |
| | ) |
| PIPER JAFFRAY & CO., | ) DEMAND FOR JURY TRIAL |
| | ) |
| Defendant. | ) |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Dale Scott & Company ("DS&C") files this Complaint for patent infringement against Defendant Piper Jaffray & Co. ("Piper Jaffray" or "Defendant") and alleges as follows:

## NATURE OF ACTION

1. Plaintiff DS&C is an independent financial advisory firm for California public school districts and community college districts (collectively "school districts" or "districts"). A significant portion of DS&C's revenue comes from helping school districts develop voter-approved bond programs and then issuing bonds.

2. DS&C has developed and owns intellectual property related to funding a school district's ongoing technology needs with general obligation ("G.O.") bonds, including the patent at issue in this action: United States Patent No. 8,533,093 (the "'093 Patent" or "patent-in-suit"). This patent covers a new type of general obligation bond, called "Ed-Tech Bonds." Ed-Tech Bonds are structured to provide on-going funding for a district's technology needs. Ed-Tech Bonds are structured, by computer algorithm, to provide a school district with an ongoing source of bond funding for technology which matches the term of the underlying bonds to the useful short-term life of technology assets to be purchased with bond proceeds. The innovation of this patent is, among other things, important for helping schools ensure that funds can be allocated efficiently so students have access to up-to-date educational technology.

3. This is a civil action for infringement of the patent-in-suit by Defendant Piper Jaffray.

4. Piper Jaffray has begun to market and sell products identical DS&C's patented Ed-Tech bonds to compete against DS&C. Piper Jaffray has told potential clients that Piper Jaffray can provide exactly the same thing as DS&C's Ed-Tech Bonds product, that no one invented this product, and that it can used by anyone who so chooses.

## PARTIES

5. Plaintiff DS&C is a corporation organized and existing under the laws of the State of California, having its principal place of business at 650 California Street, 8th Floor, San Francisco, California. DS&C is an independent financial advisory firm for California school districts and community college districts.

6. On information and belief, Piper Jaffray is a Delaware corporation with its principal place of business at 800 Nicollet Mall, Minneapolis, Minnesota, 55402-7020.

## JURISDICTION AND VENUE

7. This civil action for patent infringement arises under the Patent Laws of the United States, 35 U.S.C. §§ 1 *et seq*.

8. This Court has jurisdiction over the claims presented herein pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9. This Court has jurisdiction over Piper Jaffray because, among other reasons, Piper Jaffray is incorporated in Delaware, and has availed itself of the benefits and protections of Delaware law.

10. Venue is proper in the District pursuant to 28 U.S.C. §§ 1391(b) - (c) and 1400(b), because, among other reasons, Defendant Piper Jaffray is subject to personal jurisdiction in this district and Piper Jaffray is incorporated in Delaware.

## FACTUAL BACKGROUND

11. For more than 25 years, DS&C has served as financial advisor to California school districts and community college districts. DS&C provides consulting services related to these districts' capital funding programs for construction, acquisition, and rehabilitation of existing and new facilities and equipment, their short-term cash flow funding needs as well as long-term operational liabilities such as employee post-retirement benefits. DS&C advises its client districts on all aspects of debt issuance including development of an overall plan and strategy, structuring the terms of repayment, overseeing the rating agency application process, selecting an underwriter to finance the debt, and overseeing ongoing regulatory filing requirements associated with publicly-offered debt.

12. Before the invention of Ed-Tech Bonds, K-14 (meaning Kindergarten through two-year college) technology was typically funded using long-term G.O. bonds. That funding led to two problems. The first was that funding technology with long-term G.O. bonds resulted in a mismatch between the term of the bond (often 20 years or more) and the useful life of the asset. The second problem was that such financings were one time "fixes" and did not provide for an ongoing source of funding as the purchased technology became obsolete.

13. In response to the second issue, a number of financial firms began to offer K-14 districts a technology funding program known as *endowment bonds*. The endowment bond structure relied on selling a large amount of taxable or tax-exempt bonds, depositing the proceeds into an escrow account and drawing down the funds over time as needed to fund

technology. Although this structure solves the second, "replenishability" issue for tech funding, it still relies on the sale of long-term bonds to fund short-term assets. Tim Carty of Piper Jaffray has been a major proponent of endowment bonds.

14. Ed-Tech bonds solve both of the problems described above in Paragraph 12. They match the term of the bond with the useful life of the asset and thereby allow more frequent offerings if necessary, which in turns provides for an ongoing source of potential funding.

15. Upon the issuance of the patent-in-suit, DS&C extensively publicized its invention of Ed-Tech bonds. For example, DS&C executives have given presentations to numerous school and community college ("K-14") districts and workshops held throughout California to familiarize potential users with the product. In each such case, all DS&C printed materials clearly stated that the presentation included patented information. The invention of the Ed-Tech Bond product, and the fact that it was a patented product, was prominently featured in a recently released book by Dale Scott, the founder of DS&C, about the California K-14 general obligation bond market. Finally, articles on Ed-Tech Bonds appeared in numerous industry newsletters including those printed by School Services of California and the California Association of School Business Officials.

16. Near the end of 2013, DS&C became aware that Mr. Carty at Piper Jaffray had begun offering for sale and selling products that copy the structure and technology at the core of the patent-in-suit.

17. Piper Jaffray's infringement has deprived DS&C of sales of Ed-Tech bonds, as described in the examples below.

**Moorpark Unified School District**

18. On August 13, 2013, Mark Farrell, senior financial advisor with DS&C, called on the Moorpark Unified School District, a district that DS&C previously advised, to describe the Ed-Tech Bond product to the District's Chief Business Officer, Creig Nicks.

19. This meeting took place while the patent-in-suit on Ed-Tech Bonds was pending and Farrell's presentation was clearly marked to show that it included information for which a patent was pending.

20. Nicks stated that his district intended to issue $8.5 million of previously authorized but unissued bonds from an election in 2008 and that the funds would be used for technology projects. Nicks stated that Tim Carty had suggested the endowment bond structure and that a significant portion of the bonds would be sold as long-term capital appreciation bonds.

21. Farrell presented Nicks with a funding proposal for the issuance of this $8.5 million. Although Farrell was not proposing that the District seek voter approval of an Ed-Tech Bond to fund its technology, his proposal included a key component of the Ed-Tech Bond product; *i.e.*, the use of short-term three-year bonds so as to match the term of the borrowing with the useful life of the assets being funded.

22. Nicks stated that he wanted DS&C's Farrell and Piper Jaffray's Carty to make presentations on the two alternate funding plans to the District's Bond Oversight Committee. This did not strike Farrell as unusual because DS&C and Piper, as represented by Carty, had worked jointly in the past for Moorpark USD with DS&C serving as financial advisor and Piper as underwriter. Farrell and Carty were asked to share their proposals with each other in order to prepare a joint summary for the Committee. In reviewing Carty's proposal, Farrell noticed that it did indeed propose the use of long-term capital appreciation bonds and that such a structure

would result in additional interest costs to be borne by taxpayers in excess of $23 million as compared to the short-term bond proposal being made by DS&C.

23.  On the evening of the Bond Oversight Committee meeting, October 21, 2013, Carty approached Farrell outside the District headquarters prior to the meeting and told Farrell that Carty was recommending Moorpark USD use the Ed-Tech Bond structure proposed by DS&C.

**Murrieta Valley Unified School District**

24.  On September 17, 2013, Farrell met with Stacy Coleman, Assistant Superintendent, Business Services of Murrieta Valley Unified School District to present the Ed-Tech Bond product.  Mr. Coleman reacted positively and indicated that no one had ever presented this financing concept for the ongoing funding of technology using short-term bonds to him before.

25.  Mr. Coleman went on to say that the District was exploring the possibility of placing a bond measure on the ballot to fund technology needs and although he was not leading the District's efforts, he very much wanted Farrell to meet with William Olien, Assistant Superintendent, Facilities and Operations, the individual leading the District's efforts on the potential bond measure.

26.  Mr. Coleman further explained that the District had an existing relationship with Tim Carty at Piper Jaffray as its underwriter and that it planned to continue using Piper Jaffray as the underwriter on the new bond measure. However, the prior relationship the District had with the financial advisor, the Dolinka Group, was open for review.

27.  Following the introduction from Stacy Coleman, Farrell met with William Olien on October 1, 2013. Mr. Olien, similar to Mr. Coleman, liked the Ed-Tech Bond method of

funding technology and also said he had not seen this approach before. Mr. Olien indicated that his District had retained communications firm Clifford Moss to help with the District's community outreach regarding its technology plan.

28. After his meeting with Mr. Olien, Farrell made attempts to contact Mr. Olien to discuss the potential of DS&C working as financial advisor along with Piper Jaffray as underwriter on the District's proposed bond measure. Although Farrell has been unable to reach Mr. Olien, he has since learned that the district is planning to place a technology bond on the November 2014 ballot using what appears to be an Ed-Tech Bond structure.

**Escondido Union School District**

29. On July 19, 2013, Farrell met with Michael Taylor, Assistant Superintendent of Business Services at Escondido Union School District and presented the Ed-Tech Bond program to him. Taylor liked the idea of incorporating the Ed-Tech Bond concept into a larger combination facility and technology bond measure.

30. On October 30, 2013, Taylor and two board members attended a seminar on Ed-Tech held by DS&C in San Diego. Taylor then arranged for a follow-up meeting with the Superintendent (Jennifer Walters), himself, Farrell and Lani Lutar on November 15, 2013 to further discuss the how the District could incorporate the Ed-Tech Bond into a combination facility and Ed-Tech Bond measure.

31. The following week at a conference of school district business officials in Universal City, Taylor approached Farrell and Scott stating that he was confused since he thought the Ed-Tech product was patented but that Tim Carty had told him that Piper could do the same thing.

32. In January 2014, Taylor told Farrell that the District was hiring Carty as its financial advisor and that part of its bond measure would include short-term, recurring, technology bond issues.

## CLAIM FOR RELIEF
(Infringement of the '093 Patent)

33. DS&C incorporates paragraphs 1 through 32 as though fully set forth herein.

34. United States Patent No. 8,533,093, entitled "General Obligation Bonds for Short Asset Life Equipment," was duly and legally issued by the United States Patent and Trademark Office on September 10, 2013. A true and correct copy of the '093 Patent is attached hereto as Exhibit 1.

35. DS&C is the owner by assignment of all rights, title, and interests in the '093 Patent, and is entitled to sue for past and future infringement thereof.

36. Upon information and belief, Piper Jaffray has infringed and is currently infringing the '093 Patent in violation of 35 U.S.C. § 271, by making, using, selling, and/or offering for sale products that infringe one or more claims of the '093 Patent.

37. Piper Jaffray acted in direct competition with DS&C. As a result of Piper Jaffray's infringement, DS&C lost sales and profits.

## PRAYER FOR RELIEF

WHEREFORE, DS&C requests the following relief:

a. A judgment in favor of DS&C that Piper Jaffray has directly infringed one or more claims of the Asserted Patents;

b. A judgment that DS&C has been irreparably harmed by the infringing activities of Piper Jaffray and is likely to continue to be irreparably harmed by Defendant's continued infringement;

  c. Preliminary and permanent injunctions prohibiting Piper Jaffray and its officers, agents, servants, employees and those persons in active concert or participation with any of them, as well as all successors or assignees of the interests or assets related to the Accused Products, from further infringement of the Asserted Patents;

  d. A judgment requiring Piper Jaffray to pay DS&C damages adequate to compensate for infringement under 35 U.S.C. § 284, which damages may include lost profits but in no event shall be less than a reasonable royalty for the use made of the inventions of the Asserted Patents, including pre- and post-judgment interest and costs, including expenses and disbursements; and

  e. Any and all such further necessary or proper relief as this Court deems just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, DS&C hereby demands a trial by jury of all issues so triable.

               MORRIS, NICHOLS, ARSHT & TUNNELL LLP

               */s/ Jack B. Blumenfeld*
               Jack B. Blumenfeld (#1014)
               Julia Heaney (#3052)
               1201 North Market Street
               P.O. Box 1347
               Wilmington, DE 19899
OF COUNSEL:         (302) 658-9200
               jblumenfeld@mnat.com
Joshua H. Lerner         jheaney@mnat.com
Alex J. Feerst
DURIE TANGRI LLP        *Attorneys for Plaintiff*
217 Leidesdorff Street
San Francisco, CA 94111
(415) 362-6666

April 3, 2014